[Civ. No. 4813. Fourth Dist. Aug. 21, 1953.]

DELAVAN J. DICKSON, as County Treasurer, Plaintiff and Respondent, v. CITY OF CARLSBAD et al., Defendants and Respondents; WARREN H. CROWELL et al., Interveners and Appellants.

Wm. Mackenzie Brown for Appellants.

James Don Keller, District Attorney, and Bertram McLees, Jr., Deputy District Attorney, for Plaintiff and Respondent.

T. Bruce Smith for Defendants and Respondents.

MUSSELL, J.—This is an action for declaratory relief. The defendant Carlsbad Sanitary District, located in the county of San Diego, was formed on April 22, 1929, under and pursuant to the Sanitary District Act of 1923 (Health & Saf. Code, div. 6, pt. 1) and at all times since has functioned as a sanitary district.

On February 25, 1952, after proceedings were duly taken, the sanitary board adopted a resolution declaring its intention to order the construction of a sanitary sewer system in the district, and after proceeding pursuant to the provisions of the "Improvement Act of 1911," awarded a contract for the work on June 9, 1952. The contractors assigned the proceeds and benefits of the contract, including the warrant, diagram and assessment and bonds, representing unpaid assessments to be issued in payment for said work, to the intervenors herein. After these proceedings in reference to said work and improvement and on July 16, 1952, the defendant city of Carlsbad was incorporated as a city of the sixth class and the entire Carlsbad Sanitary District was included within the boundaries of the city.

At the time of the filing of the original complaint herein, there was on deposit in the treasury of the county of San Diego to the credit of the sanitary district certain funds amounting to the sum of $4,427.03. The district also then had outstanding certain demands for current operating expenses.

The county treasurer filed this action in order to have his duties clarified, to ascertain the status of the district and its funds, and to ascertain his duties in respect to said funds and

property and in respect to the proceedings had under the "Improvement Act of 1911."

The trial court rendered judgment holding that the sanitary district was not dissolved and did not merge with the defendant city upon its incorporation upon July 16, 1952, but that the governing board and other officers are empowered and shall continue to be empowered until the dissolution and merger of said district as hereinafter declared to operate the sanitation system of said district and to perform all duties required by law in connection with the proceeding under and pursuant to the "Improvement Act of 1911" described in the complaint in intervention on file herein; that plaintiff, as treasurer of the county of San Diego shall continue to perform for said Carlsbad Sanitary District until such dissolution and merger all services required by the Sanitary District Act of 1923 (Part 1 of Division 6 of the Health and Safety Code). The judgment further provided that "Upon the delivery to the contractors, or their agents or assigns, of the recorded warrant, assessment and diagram, as required by section 5374 of the Streets and Highways Code, for the proceeding under and pursuant to the Improvement Act of 1911 described in the complaint in intervention on file herein, said Carlsbad Sanitary District shall merge with said city of Carlsbad, its funds and property shall become the funds and property of said city, and said district shall be dissolved, subject to a showing of such delivery to this court and the making of a supplemental finding and order by this court establishing the merger; that thereafter said city of Carlsbad and its officers shall perform all functions required by law in connection with the completion of all matters, including the making of any necessary reassessments, required by the Improvement Act of 1911 for the proceeding described in the complaint in intervention on file herein, the authority of Beryl D. Phelps as engineer of said district and as engineer of work for said proceeding shall cease, and the authority and duty of plaintiff Delavan J. Dickson as ex officio treasurer of said district shall cease."

This appeal is taken by the interveners, assignees of the contractors, who, in their complaint in intervention, sought an adjudication as to the rights and obligations of the officers and directors of the sanitary board and of the council and officers of the city of Carlsbad in relation to the performance of the contract for the construction of the said sewer system.

The appellants contend (1) that the Carlsbad Sanitary

District could not be dissolved until all of the obligations of the improvement contract had been fulfilled by the officers of the district, including the execution and delivery of bonds in payment for the work; and (2) that a sanitary district formed under the "Sanitary District Act of 1923," being division 6, part 1, of the Health and Safety Code, is not automatically dissolved by the mere incorporation of coextensive territory in a city of the sixth class; and may only be dissolved in the manner set forth in sections 6900-6904 of the Health and Safety Code.

The principal question here to be determined is the effect of the incorporation of the city of Carlsbad upon the Carlsbad Sanitary District.

In the matter of the *Petition of Sanitary Board of East Fruitvale Sanitary District.*, 158 Cal. 453 [111 P. 368], a proceeding was instituted by the sanitary board of the district to determine the right of the board to issue bonds and the validity of such bonds. There the city of Oakland annexed adjacent territory which included all of the area embraced within the sanitary district. The annexation was completed on December 8, 1909, and prior thereto, on December 3, 1909, the sanitary board passed an order that the bonds of the district be issued in connection with the construction of a sewer system. ■ The court stated the rule there applicable at follows:

"It is a well-settled doctrine that 'there cannot be at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdiction and privileges.' (1 Dillon on Municipal Corporations, 4th ed., sec. 184; *King* v. *Pasmore*, 3 Term R. 199, 243; *Bloomfield* v. *Glen Ridge*, 54 N.J.Eq. 276, 283 [33 Atl. 925].)

"Accordingly, it is generally held that where one municipal corporation is annexed to another the annexing city takes over the functions of the annexed municipality, and the latter by virtue of the annexation is extinguished and its property, powers, and duties are vested in the corporation of which it has become a part. (28 Cyc. 217; *Mt. Pleasant* v. *Beckwith*, 100 U.S. 514, 528; *Adams* v. *Minneapolis*, 20 Minn. (484) 438; *People* v. *Supervisors*, 94 N.Y. 263; *Stroud* v. *Stevens Point*, 37 Wis. 367; *Schriber* v. *Langlade*, 66 Wis. 616 [29 N.W. 547, 554].)"

■ And on page 459:

"To hold that a sanitary district retains its existence and powers notwithstanding the annexation of its territory to the

city would lead to the existence within the territory annexed of two distinct local governmental bodies claiming to exercise the same powers over the same territory. Such a condition would produce intolerable confusion, if not constant conflict. We find nothing in the statute indicating an intent to so provide. It is true that the sanitary district act contains one or two expressions which might seem to indicate that a sanitary district may cover in whole or in part territory within the boundaries of a municipal corporation.''

It was also there stated that the court was not confronted with the question of the validity of bonds already issued before annexation, nor with the manner in which the courts would protect the undoubted rights of creditors whose claims accrued before annexation. It was held that with the annexation the powers of the sanitary district and of the district sanitary board ceased, as did the power of the district to issue such bonds.

In *Pixley* v. *Saunders*, 168 Cal. 152, 160 [141 P. 815] (decided in 1914) it was held that ''in enacting the Sanitary District Acts, the legislature had in mind the sanitation of any territory which might conveniently be served by a single system, whether wholly unincorporated or not, and that a sanitary district formed under said act preserves its identity and retains its powers over the whole territory, *except in the event of its complete absorption by a municipality.*'' (Underscoring supplied.)

In the instant case, at the time of the incorporation of the city of Carlsbad, the sanitary district and the assignors of the intervenors herein were parties to a contract executed under the authority of the ''Improvement Act of 1911.''

As contended by the appellants, the rights of the contractors are governed by the law in force at the time the contract was made and could not be impaired by the incorporation of the city. (*Ede* v. *Knight*, 93 Cal. 159-161 [28 P. 860]; *Jeffreys* v. *Point Richmond Canal etc. Co.*, 202 Cal. 290-293 [260 P. 548].) Since under the authority of the East Fruitvale District case, *supra*, the Carlsbad district was not authorized to issue bonds in payment for the work, the trial court correctly decreed that upon delivery to the contractors or their agents or assigns of the recorded warrant, assessment and diagram as required by section 5374 of the Streets and Highways Code, the Carlsbad Sanitary District was dissolved and that thereafter the city of Carlsbad and its officers should perform all functions required by law in

connection with the completion of all matters required by the "Improvement Act of 1911." This ruling does not impair the obligation of the contract involved. There is no showing that the performance of future acts in connection therewith cannot be accomplished by the city and its officers. Appellants argue in this connection that they will be deprived of the experience, surety bond protection and collection facilities of the county treasurer's office. However, there is no showing that the city treasurer could not adequately perform the duties required under the act or that he is not adequately bonded, or that the city engineer is not qualified to perform the duties of engineer of the work. It appears that the obligation of the unissued bonds of the proceeding under the "Improvement Act of 1911" initiated by the Carlsbad Sanitary District will in no substantive way be impaired by the performance of the duties of their enforcement by the city of Carlsbad rather than by the sanitary district.

The effect of the judgment was to provide that the incorporation of the city should not be effective as against the intervenors by interfering with their contractual rights until the recorded warrant, assessment and diagram were delivered to them in accordance with their contract, and that after that was done, the required functions should be performed by the officers of the city. The rulings of the cited cases were followed insofar as applicable and insofar as this could be done without impairing the obligation of the intervenors' contract. While some of the language of the judgment with respect to the time at which the dissolution of the district and its merger with the city takes place is not technically accurate, the meaning and effect of the judgment is clear and no prejudice appears.

Appellants contend that the East Fruitvale Sanitary District and *Pixley* v. *Saunders* cases, *supra,* are inapplicable to the instant case as they were decided under the Sanitary District Act of 1891 and not under the "1923 Act." However, neither of these statutes contain a specific legislative declaration of the effect on a sanitary district of the inclusion of all of its territory in a subsequently incorporated city, and each act contains substantially similar provisions with respect to dissolution of such districts. (Stats. 1891, p. 223; Health & Saf. Code, § 6900, et seq.)

It is further argued that it was the legislative intent that a sanitary district organized under the "1923 Act" and a municipal corporation may have dual existence and authority

in their respective fields and that this is shown by the provisions of sections 6518 and 6540 of the Health and Safety Code requiring the consent of the legislative body of the city for use of the city streets and section 6545 providing, in effect, that no assessment or bond levied or issued (under the special improvement act) shall become a lien and no person shall be deemed to have notice thereof until a certified copy of the assessment and diagram is recorded in the office of the superintendent of streets of the city if the improvement district or any part thereof is in such incorporated territory. However, section 5 of the 1891 act provided for the laying of sewers and drains in public streets upon obtaining the consent of the municipality and it must be presumed that the court in the East Fruitvale District case, *supra,* considered this provision of the act in determining a legislative intent contrary to the contention of appellants.

Judgment affirmed.

Barnard, P. J., concurred.

A petition for a rehearing was denied September 14, 1953, and appellants' petition for a hearing by the Supreme Court was denied October 15, 1953.