WARNS, J. pro tem.
 
 *
 

 This is an action for declaratory relief brought by the city of Escalón, hereinafter referred to as the city, against the Escalón Sanitary District, hereinafter referred to as the district, for an adjudication that the district was dissolved by operation of law on March 12, 1957, when the city was incorporated. From the judgment in favor of the city the district appeals.
 

 The district was formed in 1934 pursuant to the Sanitary District Act of 1919. (Stats. 1919, ch. 480, and acts amendatory thereof.) In 1948 it was reorganized under sections 6810 to 6819 of the Health and Safety Code as a sanitary district under the Sanitary District Act of 1923. (Health & Saf. Code, § 6400 et seq.) At the time the city was incorporated in 1957 the boundaries of the district were entirely embraced within the city. However, the district owned and still owns 35.5 acres of land outside of the boundaries of both. A sewage treatment plant and a place for the disposal of garbage and rubbish are situated on this land. The district is in active operation and has a general bonded indebtedness. In addition,
 
 *477
 
 it has given a contract for the collection of garbage which will not expire until December 31, 1962.
 

 The district in its answer alleged that after the incorporation of the city, the district continued to function as an organized sanitary district, entered into a contract, and incurred financial obligations with the knowledge and consent of the city. In the fiscal year 1957-1958 the city requested that the district levy and collect taxes, and it did so. It also levied and collected taxes for the fiscal year 1958-1959. At the trial the district attempted to prove that on the day before trial, i.e., December 29, 1958, its boundaries had been altered by a resolution of the Board of Supervisors of San Joaquin County, annexing to the district certain areas outside the boundaries of the city. An objection to the offer was sustained, presumably upon the grounds that it was a variance with the defendants’ pleadings.
 

 The trial court rendered its judgment that the district was dissolved by operation of law on March 12, 1957, upon the incorporation of the city of Escalón; that the city did not waive its rights to claim that the district was dissolved by operation of law upon the incorporation of the city, and that the city was not estopped to deny the validity of the continued existence of the district.
 

 The judgment further provided that upon dissolution the funds and property of the district became the funds and property of the city and that all the legal obligations of the district became the obligations of the city; that upon receipt of the funds or bonds from the district, the city shall keep said funds separate from other city funds and shall expend the same only for the purpose for which such funds were originally collected by the district. Further the judgment validated the actions taken by the district and the obligations incurred by it in connection with its continued operation and maintenance after the incorporation of the city. It provided that the city and its officers shall perform all functions required by law in connection with the operation and maintenance of the sanitary facilities of the district at the expense of the city. It provides that the city shall continue to levy, assess and collect taxes upon the property within the district for the retirement of its bonds and finally directs the officers to forthwith convey, transfer, assign and deliver to the city all real and personal property of the district.
 

 The district contends that two or more public agencies, both formed under laws established by the state Legislature may, if
 
 *478
 
 authorized by the Legislature, be vested with the same power at the same time within the same territory. It further contends that in passing the Sanitary District Act of 1923 the Legislature intended that a sanitary district, in a case such as this, could only be dissolved by means of the procedure set forth in sections 6900 to 6907.5 of the Health and Safety Code; and that the formation of a city having the same powers as the district does not automatically dissolve the district. The district argues that any other result would render sections 6900 to 6907.5 meaningless. Finally, it contends that the city waived its right to claim that the district should no longer operate by permitting and encouraging the district to continue its operations after the city was incorporated. The city’s position is contrary in all respects to that of the district. The controlling question, therefore, to be determined is the effect of the incorporation of the city of Escalón.
 

 We are of the opinion that the question has been determined by such cases as
 
 In the Matter of the Petition of Sanitary Board of East Fruitvale Sanitary District,
 
 158 Cal. 453 [111 P. 368]
 
 ; Pixley
 
 v.
 
 Satonders,
 
 168 Cal. 152, 160 [141 P. 815]; and
 
 Dickson
 
 v.
 
 City of Carlsbad,
 
 119 Cal.App.2d 809 [260 P.2d 226].
 

 In the Dickson case,
 
 supra,
 
 the Carlsbad Sanitary District was formed on April 22, 1929, under the Sanitary District Act of 1923 (Health & Saf. Code, div. 6, pt. 1), and at all times thereafter functioned as a sanitary district. On June 9, 1952, the Carlsbad Sanitary District awarded a contract for the construction of a sanitary sewer system in the 'district, pursuant to the provisions of the Improvement Act of 1911. The contractors assigned the proceeds and benefits of the contract, including the warrant, diagram and assessment and bonds, representing unpaid assessments to be issued in payment for the work to the interveners and appellants in said action. After the contract was awarded, but before the warrant, diagram and assessment and bonds were delivered, the city of Carlsbad was incorporated and the entire Carlsbad Sanitary District was included within the boundaries of the city.
 

 Thereafter, the plaintiff, as treasurer of the county of San Diego, filed an action for declaratory relief to ascertain the status of the Carlsbad Sanitary District and its funds and his duties with respect to the funds and property of the district.
 

 The trial court rendered judgment, holding that the district was not dissolved and did not merge with the defendant city
 
 *479
 
 upon its incorporation, but that the district would continue to operate until the warrants, assessments and diagrams, issued under the Improvement Act of 1911, had been delivered to the interveners who were the assignees of the contractors. From and after the delivery of the warrants, assessments and diagrams, the trial court declared that the district would be dissolved and thereafter the city of Carlsbad and its officers would perform all functions required by law in connection with the completion of all matters relating to the district.
 

 An appeal was taken by the interveners, assignees of the contractor, who, in their complaint in intervention, sought an adjudication as to the rights and obligations of the officers and directors of the sanitary board and the council and officers of the city of Carlsbad in relation to the performance of the construction of the sewer system. There, as in the instant case, appellants contended (1) that the Carlsbad Sanitary District could not be dissolved until all the obligations of the improvement contract had been fulfilled by the officers of the district, including the execution and delivery of the bonds in payment of the work, and (2) that a sanitary district formed under the Sanitary District Act of 1923, being division 6, part 1, of the Health and Safety Code, is not automatically dissolved by the mere incorporation of coextensive territory in a city of the sixth class; and may only be dissolved in the manner set forth in sections 6900-6904 of the Health and Safety Code. The court there said, at pages 812-813:
 

 “The principal question here to be determined is the effect of the incorporation of the city of Carlsbad upon the Carlsbad Sanitary District.
 

 “In the Matter of the Petition of Sanitary Board of East Fruitvale Sanitary District,
 
 158 Cal. 453 [111 P. 368], a proceeding was instituted by the sanitary board of the district to determine the right of the board to issue bonds and the validity of such bonds. There the city of Oakland annexed adjacent territory which included all of the area embraced within the sanitary district. The annexation was completed on December 8, 1909, and prior thereto, on December 3, 1909, the sanitary board passed an order that the bonds of the district be issued in connection with the construction of a sewer system. The court stated the rule there applicable as follows:
 

 “ ‘It is a well-settled doctrine that “there cannot be at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdiction and privileges.” (1 Dillon on Municipal Corporations, 4th ed.,
 
 *480
 
 § 184;
 
 King
 
 v.
 
 Pasmore,
 
 3 Term R. 199, 243;
 
 Bloomfield
 
 v.
 
 Glen Ridge,
 
 54 N.J.Eq. 276, 283 [33 A. 925].)
 

 “ ‘Accordingly, it is generally held that where one municipal corporation is annexed to another the annexing city takes over the functions of the annexed municipality, and the latter by virtue of the annexation is extinguished and its property, powers, and duties are vested in the corporation of which it has become a part. (28 Cyc. 217;
 
 Mt. Pleasant
 
 v.
 
 Beckwith,
 
 100 U. S. 514, 528 [25 L.Ed. 699] ;
 
 Adams
 
 v.
 
 Minneapolis,
 
 20 Minn. (484) 438;
 
 People
 
 v.
 
 Board of Supervisors,
 
 94 N. Y. 263;
 
 Stroud
 
 v.
 
 Stevens Point,
 
 37 Wis. 367;
 
 Schriber
 
 v.
 
 Lang-dale,
 
 66 Wis. 616 [29 N.W. 547, 554].) ’
 

 “ And on page 459 :
 

 “ ‘To hold that a sanitary district retains its existence and powers notwithstanding the annexation of its territory to the city would lead to the existence within the territory annexed of two distinct local governmental bodies claiming to exercise the same powers over the same territory. Such a condition would produce intolerable confusion, if not constant conflict. We find nothing in the statute indicating an intent to so provide. It is true that the sanitary district act contains one or two expressions which might seem to indicate that a sanitary district may cover in whole or in part territory within the boundaries of a municipal corporation.’
 

 “It was also there stated that the court was not confronted with the question of the validity of bonds already issued before annexation, nor with the manner in which the courts would protect the undoubted rights of creditors whose claims accrued before annexation. It was held that with the annexation the powers of the sanitary district and of the district sanitary board ceased, as did the power of the district to issue such bonds.
 

 “In
 
 Pixley
 
 v.
 
 Saunders,
 
 168 Cal. 152, 160 [141 P. 815] (decided in 1914) it was held that ‘in enacting the Sanitary District Acts, the legislature had in mind the sanitation of any territory which might conveniently be served by a single system, whether wholly unincorporated or not, and that a sanitary district formed under said act preserves its identity and retains its powers over the whole territory,
 
 except in the event of its complete absorption by a municipality.’
 
 (Italics supplied.) ”
 

 Appellants argue that the Sanitary District Act of 1923 is so different from the Sanitary District Act of 1891 that the East Fruitvale Sanitary District ease,
 
 supra,
 
 is not author
 
 *481
 
 ity for either the instant ease or the Dickson case,
 
 supra.
 
 The fact is, however, that the two Sanitary District Acts actually do contain substantially the same provisions concerning dissolution. (Stats. 1891, p. 223; Health & Saf. Code, § 6900 et seq.)
 

 In 1949 section 6531 of the Health and Safety Code was added. That provision deals with the effect of incorporation of a city in an established sanitary district. The section reads:
 

 “Where an entire district shall have
 
 heretofore
 
 become located within the boundaries of a city by reason of the incorporation thereof, and said district shall have continued thereafter to function as a sanitary district, and no court having jurisdiction of the subject matter shall have adjudicated that said district has merged with said city, and a portion of the boundary of said district shall thereafter have become extended beyond the territorial limits of said city by reason of annexation thereto, said district shall during all said times be and constitute a legally existing sanitary district and shall not thereafter be deemed or adjudged to have merged with said city by reason of said original inclusion therein.” (Emphasis added.)
 

 In construing this section it seems to us that it was the legislative intent to preserve the East Pruitvale doctrine as it applied to sanitary districts which were absorbed by incorporation of new cities with one exception, the exception being that it should not apply to a sanitary district which was encompassed by a city incorporated prior to 1949, which thereafter continued its operation and had annexed territory outside the city limits before its merger was adjudicated; otherwise the use of the word “heretofore” would be meaningless.
 

 The fact that the district owned property outside its boundaries, whereas in the East Pruitvale and the Carlsbad District cases all of the property was located within the boundaries of the respective districts, does not distinguish this case from those cases, since it is the undenied fact that here all of the area of the district was wholly within the boundaries of the city of Escalón at the time of its incorporation. The district was empowered to “acquire . . . such real and personal property and rights-of-way, either within or without the limits of the district, as in the judgment of the board are necessary . . . .” (Health & Saf. Code, § 6514.) However, the fact that it purchased real property and acquired certain rights-of-way outside of the district did not make such prop
 
 *482
 
 erty a part of the district. Only by following the procedures set forth in the Health and Safety Code can property become a part of the district.
 

 We find no merit in appellants’ argument that the city waived its right to claim that the district should no longer operate by permitting its continued operation after the city was incorporated.
 

 The judgment is affirmed.
 

 Van Dyke, P. J., and Schottky, J., concurred.
 

 *
 

 Asaigned by Chairman of Judicial Council.